IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(NORFOLK DIVISION)

```
FILED

MAY 14 008

CLERK, US DISTRICT COURT
NORFOLK, VA
```

| | | |
|---|---|---|
| FINNISH INSTITUTE OF<br>MARINE RESEARCH | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: *2:08cv221* |
| | ) | |
| ENVIROTECH, LLC | ) | |
| 206 Research Drive | ) | |
| Chesapeake, Virginia 23320 | ) | |
| | ) | |
| Serve: Corporation Service Company | ) | |
| 11 South 12th Street | ) | |
| P.O. Box 1463 | ) | |
| Richmond, Virginia 23218 | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff the Finnish Institute of Marine Research ("FIMR"), by counsel, hereby states its

Complaint against defendant EnviroTech, LLC ("EnviroTech") for breach of contract and

detinue as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a)(4),

because the FIMR is a foreign state as defined in 28 U.S.C. 1603(a) and the defendant is a citizen

of the Commonwealth of Virginia and the amount in controversy in this matter, exclusive of

interest and costs, exceeds $75,000.00.

2.      Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(a).

DC #428977 v1

## Parties

3.     The FIMR is a research institute under the Finnish Ministry of Transport and Communications. Headquartered in Helsinki, Finland, the FIMR pursues research in the fields of marine physics, biology and chemistry.

4.     EnviroTech is a Virginia limited liability company, having its principal place of business in Chesapeake, Virginia. EnviroTech is the manufacturer and distributor of the U-Tow marine research component, an undulating, or fixed-depth, towed vehicle with a large adaptable payload for oceanographic sensors, analyzers and samplers.

## Background

5.     The FIMR is the owner of a U-Tow system, Serial No. 2022 (the "U-Tow"), that it uses in connection with its marine research. The value of the U-Tow is approximately $ 185,000.

6.     In late 2003, the FIMR contacted EnviroTech to arrange for the overhaul and calibration of the U-Tow. EnviroTech directed the FIMR to deliver the U-Tow to Eco-Sense Ltd. ("Eco-Sense") – a United Kingdom-based affiliate of EnviroTech – to carry out the overhaul and calibration work.

7.     In the spring of 2004, Eco-Sense issued a quotation for U-Tow overhaul and calibration work, and the FIMR delivered the U-Tow to Eco-Sense in the United Kingdom to complete the work.

8.     By August 2004, Eco-Sense had not completed the U-Tow overhaul and calibration work. When the FIMR inquired as to the status, EnviroTech's Mark Rawlison advised the FIMR that the Eco-Sense individual responsible for the U-Tow work had left Eco-Sense and that the "U-Tow system is now [EnviroTech's] responsibility entirely."

DC #428977 v1

9.    Mr. Rawlison further advised the FIMR that "To be frank, open and honest it was an error to allow Eco-Sense to perform the upgrade and this was my mistake" and that "we will travel to the UK to re-commission your complete system early next year and…return it to you as soon as possible." Mr. Rawlison concluded "I am sorry for not getting in touch with you sooner."

10.    During this time, Eco-Sense delivered the U-Tow to EnviroTech.

11.    The FIMR made additional inquiries as to the status of the work in November, 2004. In response, Mr. Rawlison assured the FIMR: "I will keep you posted, but you will be in the water in the Spring no matter what."

12.    In December 2004, Mr. Rawlison gave additional assurances: "The recommissioning of the complete [U-Tow] is on-track for early next year as promised.

13.    By March 2005, the FIMR had not received the overhauled U-Tow and pressed EnviroTech for an update as to the status of the work. Mr. Rawlison responded: "Do not be alarmed and do not worry!! Everything is progressing well. The [U-Tow] will be returned fully upgraded and tested in April as promised."

14.    In April 2005, Mr. Rawlison advised the FIMR that Eco-Sense "has gone to 'sleep'" and asked that the FIMR purchase order with Eco-Sense be canceled and replaced with an EnviroTech purchase order.

15.    On July 12, 2005, EnviroTech issued a replacement quote in its name to FIMR for the U-Tow overhaul and calibration work. *See* Exhibit 1.

16.    In January 2006, EnviroTech issued a revised price quote to the FIMR, resulting in a reduction of the price of the U-Tow work from the initial EnviroTech quote. See Exhibit 2.

DC #428977 v1

As explained in EnviroTech's transmittal, the revised quote accounted for "the rework and damage that [EnviroTech] had to cover once the [U-Tow] arrived here."

17.     The FIMR replied that it would be willing to replace the Eco-Sense purchase order with the EnviroTech quote subject to the condition, among other things, that EnviroTech assume all Eco-Sense responsibilities under the original purchase order.

18.     Despite this, EnviroTech failed to complete work as promised. Indeed, during the spring of 2006 EnviroTech repeatedly promised that U-Tow would be shipped in the immediate future. Specifically, on May 8, 2006, Mr. Rawlison wrote in an email to the FIMR that "Come hell or high water we will be finished by Friday. Sorry for the delay." Later on June 2006, Mr. Rawlison advised the FIMR that "we believe once again we will be able to ship the U-Tow within 2-3 days."

19.     By the late summer of 2006, having not received the U-Tow, the FIMR informed Mr. Rawlison that there was an upcoming cruise for which the U-Tow was needed. Mr. Rawlison responded in an August 10, 2006 e-mail: "We will be ready to ship on Tuesday at the latest....You should have it in Helsinki on Thursday or Friday at the latest." EnviroTech did not ship the U-Tow as promised.

20.     Mr. Rawlison's promises of prompt delivery and excuses for failing to honor his promises continued through the end of 2006.

21.     In January 2007, the FIMR informed EnviroTech that the matter would be turned over to the Finnish Embassy in Washington, D.C. if the U-Tow did not ship by the end of the month. Mr. Rawlison replied that the "U-Tow will ship 26 January."

22.     Despite this promise EnviroTech did not deliver the U-Tow to the FIMR.

4

23.     In December 2007, EnviroTech promised delivery by the end of that year. When the U-Tow was not received, the FIMR asked EnviroTech for the name of the shipping carrier and dispatch details. Mr. Rawlison responded that the U-Tow should "have been in transit…It is airfreight so I have no tracking data, but I will call our agent." Mr. Rawlison never provided any information on the shipment of the U-Tow and the unit was not received by the FIMR.

24.     Finally, in the Spring of 2008, the FIMR's attorneys intervened and demanded that EnviroTech return the U-Tow to the FIMR. Despite the involvement of the FIMR attorneys, EnviroTech has not returned the U-Tow to the FIMR.

25.     On information and belief, the U-Tow is currently in the physical possession of EnviroTech at its Chesapeake, Virginia facility.

### Count I – Breach of Contract

26.     Paragraphs 1 through 25 are realleged as if set forth in full here.

27.     The FIMR and EnviroTech entered into a valid, binding enforceable contract, whereby EnviroTech agreed to overhaul, calibrate and deliver the U-Tow to the FIMR. As consideration, the FIMR agreed to pay EnviroTech upon return delivery of the U-Tow the sum set forth in the January 30, 2006 price quotation.

28.     EnviroTech breached its contract with the FIMR by failing to complete agreed work and return the U-Tow to the FIMR.

29.     As a result of EnviroTech's breach, the FIMR has been damaged in an amount to be determined at trial, but not less than $75,000.

Wherefore based on the foregoing, the FIMR asks that this Court enter a final judgment for the damages incurred by the FIMR as a result of EnviroTech's breach of contract in an amount to be determined, but not less than $75,000, plus pre- and post-judgment interest.

DC #428977 v1

## Count II -- Detinue

30.     Paragraphs 1 to 25 are realleged as if set forth in full here.

31.     The FIMR holds title to the U-Tow and has an immediate right of possession of the U-Tow.

32.     On information and belief, the U-Tow is in the possession of EnviroTech at its Chesapeake, Virginia facility.

33.     On numerous occasions, the FIMR has demanded that EnviroTech return the U-Tow.

34.     EnviroTech has refused the demands of the FIMR and failed to return the U-Tow.

35.     The U-Tow is valued approximately at $ 185,000.

Wherefore, based on the foregoing, the FIMR requests that this Court enter a final judgment providing for the FIMR's immediate recovery of the possession of the U-Tow if it can be had, plus a money award equal to any damage to the U-Tow, and, if immediate possession cannot be had, then a money award in an amount equal to the value of the U-Tow plus pre- and post-judgment interest and the costs of this suit and

Respectfully submitted,

Dated: May 12, 2008

Glenn C. Kennett (VSB No. 62621)
Emily A. Jones (VSB No. 073080)
Counsel for Plaintiff
THELEN REID BROWN RAYSMAN & STEINER LLP
701 Eighth Street, N.W.
Washington, D.C. 20001
202-508-4000 (telephone)
202-508-4321 (facsimile)
gkennett@thelen.com
eajones@thelen.com

6

DC #428977 v1

*Of Counsel*:
Michael E. Jaffe
Thelen Reid Brown Raysman & Steiner LLP
701 Eighth Street, N.W.
Washington, D.C. 20001-3721
(202) 508-4000 (telephone)
(202) 508-4321 (facsimile)

DC #428977 v1